Appeal No. 12-55912

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

MICHAEL ASHBEY,

Plaintiff-Appellee,

v.

ARCHSTONE PROPERTY MANAGEMENT, INC., A CORPORATION; DOES 1-50 INCLUSIVE,

Defendant-Appellant.

On Appeal from the United States District
Court for the Southern District of California
Case No. SACV 12-0009-DOC(RNBx)
Honorable David O. Carter

## DEFENDANT-APPELLANT ARCHSTONE COMMUNITIES LLC'S OPENING BRIEF ON APPEAL

Connie L. Michaels, Bar No. 128065
Sarah E. Ross, Bar No. 252206
Littler Mendelson, P.C.
2049 Century Park East, 5th Floor
Los Angeles, CA 90067.3107
Telephone: 310.553.0308
Facsimile: 310.553.5583
Attorneys for Defendant-Appellant
**ARCHSTONE COMMUNITIES LLC**
(erroneously sued as "Archstone Property Management, Inc.")

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1(a), Appellant Archstone Communities LLC (erroneously sued as "Archstone Property Management, Inc."; hereinafter "Archstone") provides the following corporate disclosure information: Lehman Brothers Holdings Inc. owns more than ten percent of Archstone's stock.


Dated:  October 22, 2012


/s/ Connie L. Michaels
CONNIE L. MICHAELS
SARAH E. ROSS
LITTLER MENDELSON, P.C.

Attorneys for Defendant-Appellant
ARCHSTONE COMMUNITIES LLC
(erroneously sued as "ARCHSTONE
PROPERTY MANAGEMENT, INC.")

1.

# TABLE OF CONTENTS

PAGE

I.    STATEMENT OF JURISDICTION ................................................. 1

II.   STATEMENT OF ISSUES RAISED ON APPEAL ....................... 2

III.  REVIEW STANDARD ................................................................. 3

IV.   STATEMENT OF THE CASE ...................................................... 3

V.    STATEMENT OF RELEVANT FACTS ........................................ 5

    A.    Background ........................................................................ 5

    B.    The Archstone Dispute Resolution Policy ............................ 5

    C.    Ashbey's Notice And Receipt Of The Dispute Resolution
        Policy .................................................................................. 8

    D.    Ashbey Refused To Arbitrate The Claims In Dispute ........ 10

VI.   SUMMARY OF THE ARGUMENT ............................................ 11

VII.  ARGUMENT .............................................................................. 14

    A.    The FAA Governs The Arbitration Agreement Between
        Archstone And Ashbey ...................................................... 14

    B.    The FAA Mandates That Archstone's Arbitration Agreement
        With Ashbey Be Enforced According To Its Terms ............ 16

    C.    The FAA Limits The Court To Determining Only The Validity
        And Coverage Of The Arbitration Agreement ................... 18

        1.    There Was A Valid Agreement To Arbitrate Between the
            Parties ....................................................................... 19

            a.    The District Court Incorrectly Held That There
                Was No Valid Offer To Form An Arbitration
                Contract ......................................................... 21

TABLE OF CONTENTS
(CONTINUED)

PAGE

(1) The Language That the Handbook Does Not "create any contractual rights" Does Not Negate An Explicit Arbitration Provision...........21

(2) Continued Employment After Receipt of Arbitration Agreement Formed An Agreement To Arbitrate .....................................29

(3) The Archstone Acknowledgement Specifically Incorporated The Arbitration Agreement .........................................................33

b. The Arbitration Provision Informed Ashbey That He Was Signing An Arbitration Agreement .................35

2. Ashbey's Claims Are Covered By the Arbitration Agreement........................................................................39

D. The Arbitration Agreements Are Not Unconscionable ....................40

1. Armendariz Was Effectively Overruled By AT&T Mobility.......................................................................42

2. Alternatively, The Policy Complies With Armendariz...........44

a. The Arbitration Agreement Is Not Procedurally Unconscionable ...........................................................44

b. The Agreement Is Not Substantively Unconscionable ...........................................................46

E. The Court Should Order Arbitration and Dismiss or Alternatively Stay This Action Pending Arbitration .........................49

VIII. CONCLUSION ........................................................................................50

ii.

# TABLE OF AUTHORITIES

**PAGE**

**CASES**

*24 Hour Fitness, Inc. v. Super. Ct.,*
  66 Cal. App. 4th 1199 (1998)...................................................46

*Allied-BruceTerminix Companies, Inc. v. Dobson,*
  513 U.S. 265 (1995) ...............................................................15, 16

*Am. Software, Inc. v. Ali,*
  46 Cal. App. 4th 1386 (1996)...................................................47

*American Mortgage Network v. LoanCity.com,*
  2006 Cal. App.......................................................................26, 27

*Armendariz v. Foundation Health Psychcare Servs.,*
  24 Cal. 4th 83 (2000)........................................................passim

*Asmus v. Pacific Bell,*
  23 Cal. 4th 1 (2000).........................................................passim

*AT&T Mobility LLC v. Concepcion,*
  563 U.S. ___, 131 S.Ct. 1740 (2011) ..............................passim

*AT&T Technologies, Inc. v. Communications Workers of America,*
  475 U.S. 643 (1986) ...............................................................18

*Bianco v. H.F. Ahmanson & Co.,*
  897 F. Supp. 433 (C.D. Cal. 1995)......................................12, 26

*Burke v. Award, Inc.,*
  G042606, 2011 Cal. App. Unpub. LEXIS 4810 (June 28, 2011) .....................38

*Bushley v. Credit Suisse First Boston,*
  360 F.3d 1149 (9th Cir. 2004).................................................3

*Cariaga v. Local No. 1184 Laborers Int'l Union of N. Am.,*
  154 F.3d 1072 (9th Cir. 1998)............................................14, 38

*Chan v. Drexel Burnham Lambert, Inc.,*
  178 Cal. App. 3d 632 (1986)..........................................14, 37, 38

# TABLE OF AUTHORITIES
## (CONTINUED)

PAGE

*Chazen v. Ciolino (In re Ryan),*
310 Fed. Appx. 980 (9th Cir. 2009) ................................................26, 27, 33, 38

*Circuit City Stores v. Adams,*
532 U.S. 105 (2001) ....................................................................... 15

*Citizens Bank v. Alafabco, Inc.,*
539 U.S. 52 (2003) ......................................................................... 15

*CompuCredit Corp. v. Greenwood,*
132 S.Ct. 665 (2012)................................................................... 18, 40

*Craig v. Brown & Root,*
84 Cal. App. 4th 416 (2000).....................................................passim

*Cronus Investments, Inc. v. Concierge Services,*
35 Cal. 4th 376 (2005) ............................................................... 16, 17

*Dallman Supply Co. v. Smith-Blair, Inc.,*
103 Cal. App. 2d 129 (1951) ............................................................. 21

*Davis v. O'Melveny & Myers,*
485 F.3d 1066 (9th Cir. 2007)........................................................... 47

*Derr v. Superior Court,*
2012 Cal. App. Unpub. LEXIS 968 (Feb. 8, 2012)....................................38, 39

*DiGiacinto v. Ameriko-Omserv Corp.,*
59 Cal. App. 4th 629 (1997) ............................................................. 30

*Discover Bank v. Superior Court,*
36 Cal. 4th 148 (2005).................................................................... 43

*Doctor's Associates, Inc. v. Casarotto*
517 U.S. 681 (1996) ...................................................................... 20

*Dominguez v. Alden Enterprises, Inc.,*
2009 Cal. App. Unpub. LEXIS 35 (Jan. 6, 2009) ...................................... 13

*Douglass v. Pfluger Haw., Inc.,*
110 Haw. 520 (2006) ..................................................................... 29

# TABLE OF AUTHORITIES
## (CONTINUED)

PAGE

*EEOC v. Waffle House*,
534 U.S. 279 (2002) ...................................................... 15

*Engalla v. Permanente Medical Group, Inc.*,
15 Cal. 4th 951 (1997)................................................... 44

*First Options of Chicago, Inc. v. Kaplan*,
514 U.S. 938 (1995) ...................................................... 20

*Fittante v. Palm Springs Motors*,
105 Cal. App. 4th 708 (2003)........................................ 46

*Gallos v. FIC Am. Corp.*,
2003 U.S. Dist. LEXIS 6080 (N.D. Ill. April 14, 2003) ................................... 29

*Gibson v. Neighborhood Health Clinics*,
121 F.3d 1126 (7th Cir. 1997)....................................... 29

*Gilmer v. Interstate/Johnson Lane Corp.*,
500 U.S. 20 (1991) ....................................................... 40

*Graham v. Scissor-Tail, Inc.*,
28 Cal. 3d 807 (1981)............................................... 44, 45

*Green Tree Financial Corp. v. Randolph*,
531 U.S. 79 (2000) ..................................................... 3, 17

*Haggard v. Kimberly Quality Care, Inc.*,
39 Cal. App. 4th 508 (1995)............................... 12, 25, 26

*Harper v. Ultimo*,
113 Cal. App. 4th 1402 (2003)...................................... 45

*Hergenreder v. Bickford Senior Living Group, LLC*,
656 F.3d 411 (6th Cir. 2011) ........................................ 29

*Howsam v. Dean Witter Reynolds*,
537 U.S. 79 (2002) ................................................... 18, 34

*Kummetz v. Tech Mold, Inc.*,
152 F.3d 1153 (9th Cir. 1998)................................. passim

# TABLE OF AUTHORITIES
### (CONTINUED)

PAGE

*Little v. Auto Stiegler, Inc.*,
   29 Cal. 4th 1064 (2003)..................................................................43

*Lozano v. AT&T Wireless Servs.*,
   504 F.3d 718 (2007) .....................................................................16

*Marmet Health Care Ctr., Inc. v. Brown*,
   132 S. Ct. 1201 (2012)............................................................18, 40

*Mastrobuono v. Shearson Lehman Hutton, Inc.*,
   514 U.S. 52 (1995) .......................................................................15

*Mayers v. Volt Management Corporation*,
   203 Cal. App. 4th 1194 (Feb. 27, 2012)......................................32

*Mayers v. Volt Management Corporation*,
   278 P.3d 1167 (June 13, 2012).....................................................33

*McKinney v. Bonilla*,
   2010 U.S. Dist. LEXIS 71730 (S.D. Cal. July 15, 2010)............33

*Mitri v. Arnel Management Co.*,
   157 Cal. App. 4th 1164 (2007).................................13, 24, 33, 34

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*,
   473 U.S. 614 (1985) .....................................................................40

*Moncharsh v. Heily & Blasé*,
   3 Cal. 4th 1 (1992).......................................................................41

*Morris v. Redwood Empire Bancorp.*,
   128 Cal. App. 4th 1305 (2005)................................................45, 47

*Mount Diablo Medical Center v. Health Net of California, Inc.*,
   101 Cal. App. 4th 711 (2002).......................................................15

*Nelson v. Cypress Bagdad Copper Corp.*,
   119 F.3d 756 (9th Cir. 1997)....................................................29, 34

*Nghiem v. NEC Electronic, Inc.*,
   25 F.3d 1437 (9th Cir. 1994).........................................................19

# TABLE OF AUTHORITIES
## (CONTINUED)

PAGE

*Nygard, Inc. v. Uusi-Kerttula*
    159 Cal. App. 4th 1027 (2008)........................................................22

*Pearson Dental Supplies, Inc. v. Superior Court,*
    48 Cal. 4th 665 (2010)..................................................23, 24, 40, 41

*Perry v. Thomas,*
    482 U.S. 483 (1987) ..............................................................17, 41

*Pinnacle Museum Tower Ass'n v. Pinnacle Market Development (US) LLC,*
    55 Cal. 4th 223 (2012)...........................................................passim

*Prouty v. Gores Tech. Group,*
    121 Cal. App. 4th 1225 (2004)....................................................22

*Romo v. Y-3 Holdings, Inc.,*
    87 Cal. App. 4th 1153 (2001)..............................12, 13, 27, 35

*Sanchez v. Western Pizza Enterprises, Inc.,*
    172 Cal. App. 4th 154 (2009).....................................................44

*Scott v. Pacific Gas & Electric Co.,*
    11 Cal. 4th 454 (1995)...............................................................23

*Simula, Inc. v. Autoliv, Inc.,*
    175 F.3d 716 (9th Cir. 1999)................................................19, 49

*Southland Corp. v. Keating,*
    465 U.S. 1 (1984) ......................................................................17

*Sparling v. Hoffman Constr. Co.,*
    864 F.2d 635 (9th Cir. 1988)......................................................49

*Stolt-Nielsen S. A. v. AnimalFeeds Int'l Corp,*
    130 S. Ct. 1758 (April 27, 2010) ...............................................16

*Vianna v. Doctors' Management Co.,*
    27 Cal. App. 4th 1186 (1994).....................................................40

*Volt Info. Sciences v. Leland Stanford Univ.,*
    489 U.S. 468 (1989) ..................................................................16

vii.

# TABLE OF AUTHORITIES
## (CONTINUED)

PAGE

*Wayne v. Staples, Inc.*,
  135 Cal. App. 4th 466 (2006) .......................................................... 45

**STATUTES**

9 U.S.C.
  Section 2 ........................................................................................ 15

9 U.S.C.
  Sections 3-4 ................................................................................... 50
  section 16 ........................................................................................ 1

28 U.S.C.
  Section 1331 .................................................................................... 1
  Sections 1332(d), 1441, and 1446 .................................................. 1
  Section 1367 .................................................................................... 1

29 U.S.C.
  Section 207.. .................................................................................... 3
  Section 216 ...................................................................................... 3

California Civil Code
  Section 1550 .................................................................................. 36
  Section 1643. ........................................................................... 24, 41
  Section 1670.5 .............................................................................. 41
  Section 3541 ........................................................................... 24, 41

California Code of Civil Procedure
  Sections 1281, 1281.2 ................................................................... 41

California Evidence Code
  Section 500 .................................................................................... 44

California Business and Professions Code
  Section 17200 .................................................................................. 4

Federal Arbitration Act (9 U.S.C. §§ 1 et seq.) ............................11, 16, 18

# TABLE OF AUTHORITIES
## (CONTINUED)

PAGE

Government Code
    Section 12940(h), *et seq.* .......................................................................... 3
    Section 12940(j) and (k) ............................................................................. 3

California Labor Code
    Section 203 ...................................................................................................... 3
    Section 226 ...................................................................................................... 3

42 U.S.C.
    Section 2000e(2), *et seq.* ........................................................................... 3

**OTHER AUTHORITIES**

California Rule of Court
    Rule 8.1105(e) .............................................................................................. 33
    Rule 8.1115 ................................................................................... 26, 33, 38

Federal Rule of Appellate Procedure
    Rule 4(a) ......................................................................................................... 2
    Rule 32(a)(7)(C) ......................................................................................... 51
    Rule 32.1 ..................................................................................... 27, 33, 38

Federal Rule of Civil Procedure
    Rule 4 .............................................................................................................. 2

Firmwide:114992906.5 050606.1054

# I.

## STATEMENT OF JURISDICTION

The United States District Court for the Central District of California has original jurisdiction over this action pursuant to 28 U.S.C. sections 1332(d), 1441, and 1446, on the grounds that it is a civil action between citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs. Plaintiff Michael Ashbey (hereinafter "Ashbey") is a citizen of California and Archstone is a citizen of Colorado.

The District Court also independently has original jurisdiction over this action pursuant to 28 U.S.C. section 1331 because Ashbey's fifth, sixth, ninth, tenth and eleventh causes of action allege violations under various federal statutes. The District Court further has supplemental jurisdiction of Ashbey's remaining state law based claims under 28 U.S.C. § 1367 because they are so related to the claims within which this Court has federal question jurisdiction that they form part of the same case and controversy.

This Court has jurisdiction over this appeal pursuant to 9 U.S.C. section 16, on the ground that it is an appeal from an order of a District Court entered on April 16, 2012, denying a Motion to Compel arbitration and dismiss action, or, in the alternative, to the stay the action pending completion of arbitration. Archstone

filed its notice of appeal on May 15, 2012.[1] The appeal is therefore timely pursuant to Rule 4(a) of the Federal Rules of Appellate Procedure.

## II.

### STATEMENT OF ISSUES RAISED ON APPEAL

(1)   Whether the District Court improperly denied the Motion to Compel arbitration by finding that language in a handbook acknowledgment did not "create any contractual rights" to arbitrate Ashbey's claims;

(2) Whether the District Court improperly denied the Motion to Compel arbitration by finding that continued employment after receipt of an arbitration agreement is not a sufficiently definitive term and thus the acts that constitute acceptance and performance were not "reasonably certain"; and

(3) Whether the District Court improperly denied the Motion to Compel arbitration by finding that a handbook acknowledgement did not specifically reference or incorporate the arbitration agreement.

(Full text of all pertinent constitutional provisions, treaties, statutes, ordinances, regulations and rules are included in an attached statutory addendum.)

---

[1] Although the District Court's order was *filed* on April 13, 2012, it was not *entered* until April 16, 2012. (ER 145.) As Federal Rule of Civil Procedure Rule 4 states that the appeal must be filed within 30 days after "*entry* of the judgment or order appealed from," Archstone's appeal was timely.

## III.

## REVIEW STANDARD

This Court reviews *de novo* a district court's decision to deny a motion to compel arbitration and stay all proceedings pending arbitration. *Bushley v. Credit Suisse First Boston*, 360 F.3d 1149, 1152 (9th Cir. 2004). "The party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration.'" *Green Tree Financial Corp. v. Randolph*, 531 U.S. 79, 91 (2000).

## IV.

## STATEMENT OF THE CASE

On November 3, 2011, Ashbey filed a lawsuit against Archstone for: (1) Failure to Pay Minimum Wage in Violation of California Labor Code; (2) Failure to Pay Overtime Compensation Under California Industrial Welfare Commission Orders and California Labor Code; (3) Failure to Itemize Wage Statements As Required Under Labor Code § 226; (4) Waiting Time Penalties Under Labor Code § 203; (5) Overtime Pay and Liquidated Damages Under 29 U.S.C. § 207 and § 216; (6) Failure to Pay Minimum Wage in Violation of the Fair Labor Standards Act; (7) Retaliation in Violation of Government Code § 12940(h), *et seq.*; (8) Failure to Take Reasonable Steps to Prevent Retaliation in Violation of Government Code § 12940(j) and (k); (9) Retaliation in Violation of Title VII, 42 U.S.C. § 2000e(2), *et seq.*; (10) Wrongful Termination in Violation of Public

Policy; and (11) Violations of California Business and Professions Code § 17200. (Excerpts of Record ("ER") 118.)  On January 3, 2012, Archstone removed the case to the United States District Court for the Central District of California. (ER 143.)

On January 30, 2012, Archstone moved to compel arbitration of Ashbey's claims and to dismiss the action or, in the alternative, to stay the action pending completion of arbitration. Ashbey opposed the motion. (ER 43-72, 143.)

On April 16, 2012, the District Court entered an order denying Archstone's Motion to Compel Arbitration, finding *sua sponte* there was no valid arbitration agreement between the parties because: (1) the language in an acknowledgment of the handbook in which the agreement was contained did not "create any contractual rights" and implied that there was no valid offer; (2) there was no valid offer for an arbitration agreement because continued employment after receipt of an arbitration agreement is not a sufficiently definitive term so that the acts that constitute acceptance and performance are "reasonably certain"; and (3) there was no valid arbitration agreement because the acknowledgement did not specifically reference or incorporate the arbitration agreement. Finding no valid agreement, the District Court did not reach Ashbey's argument that the arbitration agreement was unconscionable. (ER 1-20, 145.)

On May 15, 2012, Archstone filed a Notice of Appeal of the order denying

the Motion to Compel arbitration of Ashbey's claims. (ER 21-42, 145.)  On June 13, 2012, Archstone and Ashbey filed a Joint Stipulation to Stay Case and Vacate Dates Pending Appeal, which the District Court signed on June 20, 2012.  (ER 145.)

## V.

## STATEMENT OF RELEVANT FACTS

### A.    Background.

From about December 1996 to November 2010, Ashbey was employed at Archstone.  His final position was Regional Service Manager.  (ER 120, 123, ¶¶ 10, 12, 13, 14, 43.)

On November 3, 2011, Ashbey filed a Complaint in the Superior Court for the State of California, County of Orange, alleging claims that arose directly from his employment relationship with Archstone, including garden variety wage-hour claims and causes of action for retaliation and wrongful termination.  (ER 118.) Archstone filed an Answer alleging, *inter alia*, that the case was subject to arbitration in affirmative defenses numbers 43 - 45 and then removed the case from state to federal court.  (ER 113, ¶¶ 43-45.)

### B.    The Archstone Dispute Resolution Policy.

Archstone maintains and enforces the terms of its Company Policy Manual, which is provided to all employees once each year in a hard copy format, along

with instructions on how to access the on-line version where interim updates are included. (ER 74, ¶¶ 3, 5.) At all applicable times, the on-line version of the Company Policy Manual was directly available through the Company's intranet, which houses Archstone's internal website, and was available to all Archstone employees, including Ashbey. (ER 74, ¶ 5.) The Acknowledgement of Receipt of Archstone Company Policy Manual accompanying the 2009 and 2010 Company Policy Manuals affirmatively noted that instructions had been received on how to access the Archstone Company Policy Manual, including the Dispute Resolution Policy. (ER 74-76, 83-86, ¶¶ 4, 9, 10, 11, Exhibits ("Exh.") C, D.)

Archstone's Dispute Resolution Policy explains that it "applies to any dispute arising out of or related to employment of the employee named on the signature page hereof ("Employee") with Archstone or one of its affiliates, subsidiaries or parent companies or termination of employment." (ER 75, 80-82, ¶ 8, Exh. B.) The Dispute Resolution Policy also provides:

> A demand for arbitration must be in writing and delivered by hand or first class mail to the other party within the applicable statute of limitations period. Any demand for arbitration made to the Company shall be provided to the Company's Vice President, Human Resources, with a copy to the Legal Department, both directed to: Archstone, 9200 E. Panorama Circle, Suite 400, Englewood, CO 80112. The arbitrator shall resolve all disputes regarding the timeliness or propriety of the demand for arbitration.
>
> * * * * *

6.

Each party will pay the fees for his, her or its own attorneys, subject to any remedies to which that party may later be entitled under applicable law. However, in all cases where required by law, the Company will pay the arbitration fees. If under applicable law the Company is not required to pay all of the arbitration fees, such fee(s) will be apportioned between the parties by the Arbitrator in accordance with said applicable law.

Within 30 days of the close of the arbitration hearing, any party will have the right to prepare, serve and file with the Arbitrator a brief. The Arbitrator may award any party any remedy to which that party is entitled under applicable law, but such remedies shall be limited to those that would be available to a party in a court of law for the claims presented to and decided by the Arbitrator. The Arbitrator will issue a decision or award in writing, stating the essential findings of fact and conclusions of law. Except as may be permitted or required by law, neither a party nor an Arbitrator may disclose the existence, content, or results of any arbitration hereunder without the prior written consent of all parties, except to its accountants, counsel, lenders and investors, including potential lenders and investors. A court of competent jurisdiction shall have the authority to enter a judgment upon the award made pursuant to the arbitration.

*(Id.)*

The Dispute Resolution Policy also contains a specific statement that defines the scope of claims and potential claims that must be submitted to arbitration:

Except as it otherwise provides, this Policy is intended to apply to the resolution of disputes that otherwise would be resolved in a court of law, and therefore this Policy requires all such disputes between Employee and the Company to be resolved only by an arbitrator through final and binding arbitration and not by way of court or jury trial. Such disputes include without limitation

7.

> disputes arising out of or relating to interpretation or
> application of this Policy. This Policy also applies,
> without limitation, to disputes arising out of the
> employment relationship or the termination thereof
> including, without limitation, disputes over trade secrets,
> unfair competition, compensation, breaks and rest
> periods, termination, or harassment and claims arising
> under the Uniform Trade Secrets Act, Civil Rights Act of
> 1964, Americans With Disabilities Act, Age
> Discrimination in Employment Act, Family Medical
> Leave Act, Fair Labor Standards Act, Employee
> Retirement Income Security Act, and state statutes, if
> any, addressing the same or similar subject matters, and
> all other state statutory and common law claims
> (excluding workers compensation, state disability
> insurance and unemployment insurance claims).

*(Id.)*

## C.     Ashbey's Notice And Receipt Of The Dispute Resolution Policy.

Annually, Archstone provides a hard copy of the Company Policy Manual to all employees and asks them to complete an Acknowledgement of Receipt form. (ER 74, 75, ¶¶ 4, 9.)    A memorandum was distributed to all employees contemporaneously with the hard copy of the 2009 Company Policy Manual, which stated, in part as follows:

> We are pleased to provide you with the 2009 modification
> summary of the Company Policy Manual. Since this
> manual supersedes all previous company policy manuals
> please destroy any old versions. The 2009 modifications
> summary includes changes to past policies.
>
> Summary of Modifications:
>
>                    * * * * * * * * *

8.

| Dispute Resolution Policy | Not in 2008 manual. | Associate and company agree to utilize an outside arbitrator for any disputes relating to employment and/or termination of employment. Please see page 20 in the manual for a complete description of this new policy. |
|---|---|---|

(ER 74, 75, 77-79, ¶¶ 6, 7, Exh. A.)

The Acknowledgment provided to all employees, including Ashbey, stated:

> I acknowledge that I have received directions as to how I may access the Archstone Company Policy Manual, including the Dispute Resolution Policy. I understand that Archstone can administer, interpret, discontinue, supplement, amend or withdraw any of the employment and personnel policies and procedures set forth in this Company Policy Manual. <u>I understand that it is my responsibility to understand the Archstone Company Policy Manual, including the Dispute Resolution Policy, and to adhere to all of the policies contained herein.</u>
>
> \* \* \* \* \* \* \* \* \* \* \*
>
> I also understand that this Company Policy Manual does not alter the employment-at-will relationship discussed in the Archstone Company Policy Manual or create any contractual rights. I understand that, as an employee-at-will, either Archstone or I may terminate the employment relationship at any time, with or without notice or cause. I understand that if at any time I have any questions regarding this Company Policy Manual I can discuss them with my supervisor, office manager, the Legal Department or a Human Resources representative. During my employment, I agree to abide by the provisions contained in this Company Policy Manual.

(ER 74-76, 83-86, ¶¶ 4, 9, 10, 11, Exhs. C, D.)

Ashbey was aware of the Company Policy Manual and the Dispute Resolution Policy. From the Company's intranet home page, Ashbey could easily access the Company Policy Manual. (ER 74, ¶ 5.) The Human Resources Portal on the company intranet provides employees immediate access to all Human Resources materials, including, specifically, the Company Policy Manual and the Dispute Resolution Policy set forth therein. (*Id.*) Ashbey affirmed his knowledge of Archstone's policies and procedures (including, specifically, the Dispute Resolution Policy) by completing and signing an Acknowledgement of Receipt on March 16, 2009 and March 8, 2010. (ER 74-76, 83-86, ¶¶ 4, 9, 10, 11, Exhs. C, D.) And, as noted above, Ashbey's employment at Archstone continued thereafter until November 2010. (ER 123, ¶ 43.)

### D. Ashbey Refused To Arbitrate The Claims In Dispute.

On November 3, 2011, Ashbey filed his Complaint, serving Archstone with an amendment to it, along with a Summons and Complaint, on December 2, 2011. On December 15, 2011, prior to receipt of the Summons and Complaint in this matter, defense counsel wrote to Ashbey's counsel asking that he agree to arbitrate Ashbey's claims, and Ashbey's counsel replied on December 20, 2011 that he would not agree. (ER 88, 90-102, ¶¶ 2, 3, Exhs. A, B.)

# VI.

## SUMMARY OF THE ARGUMENT

Ashbey's Complaint alleges a variety of commonplace wage and hour claims as well as claims for retaliation and wrongful termination, each of which would not exist but for Ashbey's employment relationship with Archstone. All of Ashbey's claims are subject to an arbitration agreement. Archstone thus moved to compel arbitration of Ashbey's claims under the Federal Arbitration Act (9 U.S.C. §§ 1 et seq.) ("FAA") and to dismiss the action or stay all proceedings pending arbitration. The District Court refused to enforce the arbitration agreement because it found that language in an acknowledgment form precluded formation of an arbitration contract. The District Court erred because it failed to properly apply United States Supreme Court, Ninth Circuit and California case law. It also failed to apply maxims of contract formation and construction, which if properly applied, would have resulted in a ruling that a contract to arbitrate Ashbey's disputes was indeed formed.

The District Court first found that there was no offer to form an arbitration contract because the language in the Archstone acknowledgements that "this Company Policy Manual does not alter the employment-at-will relationship discussed in the Archstone Company Policy Manual or create any contractual rights" is a disclaimer of any contractual rights. Under the maxim of "*ejusdem*

*generis,*" however, the only proper interpretation of the phrase "any contractual rights" is that it refers to rights other than at-will employment, not any contract at all. Moreover, none of the cases relied upon by the District Court actually invalidated an arbitration agreement because of such language. *See Haggard v. Kimberly Quality Care, Inc.*, 39 Cal. App. 4th 508 (1995) (concluding that express at-will language precluded implied contract for termination only with good cause); *accord Bianco v. H.F. Ahmanson & Co.,* 897 F. Supp. 433 (C.D. Cal. 1995); *Romo v. Y-3 Holdings, Inc.,* 87 Cal. App. 4th 1153 (2001) (arbitration agreement required that plaintiff sign it, and plaintiff had never done so); *Kummetz v. Tech Mold, Inc.*, 152 F.3d 1153 (9th Cir. 1998) (finding that there was no valid arbitration agreement because the agreement contained "no *explicit* reference to arbitration or waiver of right to sue" and, therefore, "failed to alert [the plaintiff] to the fact that Information Booklet contained an arbitration clause").

Second, the District Court incorrectly held that Ashbey's continued employment after receiving Archstone's Dispute Resolution Policy was not evidence of his assent to the arbitration agreement. However, in California, employers are free to unilaterally impose terms and conditions of employment by providing reasonable notice to at-will employees who accept those terms by electing to remain employed thereafter. *See Asmus v. Pacific Bell*, 23 Cal. 4th 1 (2000). The District Court concluded that the *Asmus* holding does not apply to

12.

arbitration agreements. However, because the *Asmus* rule applies to contracts in general and, in particular, employment contracts, it must be applied to arbitration agreements. *AT&T Mobility LLC v. Concepcion*, 563 U.S. ___, 131 S.Ct. 1740, 1745 (2011) ("courts must place arbitration agreements on an equal footing with other contracts"). In *Craig v. Brown & Root*, 84 Cal. App. 4th 416 (2000), the appellate court applied the *Asmus* rule to an arbitration agreement. Most recently, the California Supreme Court in *Pinnacle Museum Tower Ass'n v. Pinnacle Market Development (US) LLC*, 55 Cal. 4th 223 (2012), cited *Craig* with approval for this very proposition, stating "A signed agreement is not necessary, however, and a party's acceptance may be implied in fact (e.g., *Craig*, at p. 420 [employee's continued employment constitutes acceptance of an arbitration agreement proposed by the employer])." *Id.* at 236.

The District Court also cited cases that it held showed deficiencies in the acknowledgement forms Ashbey signed. However, these cases are readily distinguishable, because unlike the case at bar, the acknowledgements did not reference an agreement to arbitrate particularly. *See Mitri v. Arnel Management Co.*, 157 Cal. App. 4th 1164 (2007) (signature absent from agreement requiring a signature); *accord Romo*, 87 Cal. App. 4th at 1155-60 (acknowledgement form signed by plaintiff did not cover an agreement to arbitrate); *accord Dominguez v. Alden Enterprises, Inc.*, 2009 Cal. App. Unpub. LEXIS 35 (Jan. 6, 2009)

(unpublished case of no precedential value in California courts but relied upon by District Court); *see also, Kummetz*, 152 F.3d at 1155 (acknowledgement form did not "mention or imply anything about employment-related disputes"); *Chan v. Drexel Burnham Lambert, Inc.*, 178 Cal. App. 3d 632, 643 (1986) (form signed by plaintiff did not reference a specific arbitration policy); *accord Cariaga v. Local No. 1184 Laborers Int'l Union of N. Am.,* 154 F.3d 1072, 1075 (9th Cir. 1998) (agreement did not refer to arbitration).

In this case, however, the acknowledgement form Ashbey signed specifically referenced the Dispute Resolution Policy, which is Archstone's arbitration agreement. Thus, the key factor missing in the cases upon which the District Court relied was present in the case at bar.

Accordingly, Archstone respectfully requests the Court compel arbitration in accordance with the terms of the arbitration agreement and either dismiss or stay this action pending completion of all arbitration proceedings.

## VII.

## ARGUMENT

### A. The FAA Governs The Arbitration Agreement Between Archstone And Ashbey.

In *AT&T Mobility, LLC v. Concepcion*, 131 S.Ct. at 1745, the United States

14.

Supreme Court reaffirmed the FAA's liberal policy favoring the enforcement of arbitration policies as written. The FAA applies to agreements "involving commerce." 9 U.S.C. § 2. The Supreme Court has "interpreted the term 'involving commerce' as the functional equivalent of the more familiar term 'affecting commerce'—words of art that ordinarily signal the broadest permissible exercise of Congress' Commerce Clause power." *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003); *accord, Allied-BruceTerminix Companies, Inc. v. Dobson*, 513 U.S. 265, 272 (1995).

Ashbey's Complaint is subject to the FAA because this case concerns an arbitration agreement entered into by Archstone, a citizen of Colorado, and its former employee, a resident and citizen of California. (ER 119, ¶¶ 1, 3.) Thus, the underlying transaction affects interstate commerce. The FAA also directly applies to employment contracts, including mandatory employment arbitration agreements. *Circuit City Stores v. Adams*, 532 U.S. 105 (2001); *EEOC v. Waffle House*, 534 U.S. 279, 289 (2002).

So broad is the FAA's reach that in order for state law to apply exclusively to an arbitration agreement, the agreement must clearly opt out of the FAA and express that state law applies. *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 63-64 (1995), as explained in *Mount Diablo Medical Center v. Health Net of California, Inc.*, 101 Cal. App. 4th 711, 722-23 (2002) (finding portions of the

15.

California Arbitration Act ["CAA"] applicable only because "[t]he choice of law provision" provides that issues of contract "validity, interpretation and enforcement . . . shall be governed by California law"); *see also Volt Info. Sciences v. Leland Stanford Univ.*, 489 U.S. 468, 470 (1989) (finding that the CAA applied instead of the FAA "in a case where the parties have agreed that their arbitration agreement will be governed by the law of California"). Here, however, the arbitration agreement states that it is "governed by the Federal Arbitration Act, 9 U.S.C. §§ 1, et seq." (ER 75, 80-82, ¶ 8, Exh. B.)

**B.     The FAA Mandates That Archstone's Arbitration Agreement With Ashbey Be Enforced According To Its Terms.**

"[T]he central or 'primary' purpose of the FAA is to ensure that 'private agreements to arbitrate are enforced according to their terms.'" *Stolt-Nielsen S. A. v. AnimalFeeds Int'l Corp,* 130 S. Ct. 1758, 1773 (April 27, 2010) (quoting *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989)). "Contractual arbitration agreements are equally applicable to statutory claims as to other types of common law claims." *Lozano v. AT&T Wireless Servs.,* 504 F.3d 718, 725 (2007).

The FAA was enacted to overcome courts' reluctance to enforce arbitration agreements. *Allied Bruce Terminix Co., Inc.*, 513 U.S. at 270-71; *Cronus Investments, Inc. v. Concierge Services*, 35 Cal. 4th 376, 383-84 (2005). It not

only placed such agreements on equal footing with other contracts but also established a federal policy in favor of arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary. *See, e.g., Green Tree Financial Corp. v. Randolph*, 531 U.S. 79, 89-90 (2000) (noting that the Supreme Court has "rejected generalized attacks on arbitration that rest on 'suspicion of arbitration as a method of weakening the protections afforded in the substantive law to would-be complainants'"); *Southland Corp. v. Keating*, 465 U.S. 1, 10 (1984) (in enacting the FAA, "Congress declared a national policy favoring arbitration and withdrew the power of the states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration"); *Pinnacle Museum,* 55 Cal. 4th at 234-35 (finding that the FAA "stands as 'a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary'").

Thus, the FAA "requires that questions of arbitrability . . . be addressed with a healthy regard for the federal policy favoring arbitration." *Cronus Investments, Inc.,* 35 Cal. 4th at 386 (citing *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983)). This "liberal federal policy favoring arbitration agreements" in effect creates "a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the [FAA]." *Perry*

17.

*v. Thomas*, 482 U.S. 483, 489 (1987); *see also Pinnacle Museum,* 55 Cal. 4th at 235 (citing *Perry* for the same argument). Thus, "[w]here the contract contains an arbitration clause, there is a presumption of arbitrability." *AT&T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 650 (1986).

"State and federal courts **must** enforce the Federal Arbitration Act (FAA), 9 U. S. C. §1 *et seq.*, with respect to all arbitration agreements covered by that statute." *Marmet Health Care Ctr., Inc. v. Brown*, 132 S. Ct. 1201, 1202 (2012) (emphasis added). Further, "[a]rbitration is a matter of contract, and the FAA requires courts to honor parties' expectations." *AT&T Mobility*, 131 S. Ct. at 1752. "The point of affording parties discretion in designing arbitration processes is to allow for efficient, streamlined procedures tailored to the type of dispute." *Id.* at 1749. The FAA thus "requires courts to enforce agreements to arbitrate according to their terms." *CompuCredit Corp. v. Greenwood,* 132 S.Ct. 665, 669 (2012).

## C. The FAA Limits The Court To Determining Only The Validity And Coverage Of The Arbitration Agreement.

In deciding whether to compel arbitration under the FAA, the Court is tasked with determining just two "gateway" issues: (1) whether there was an agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute. *Howsam v. Dean Witter Reynolds*, 537 U.S. 79 (2002). Here, both criteria are satisfied. Therefore, the FAA requires a court to enforce the arbitration agreement

18.

in accordance with its terms. *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 719 (9th Cir. 1999).

### 1. There Was A Valid Agreement To Arbitrate Between the Parties.

Ashbey agreed to arbitrate his claims. Ashbey twice signed the Acknowledgement of Receipt of Archstone Company Policy including his acknowledgement of receipt of the Dispute Resolution Policy. (ER 74-76, 83-86, ¶¶ 4, 9, 10, 11, Exhs. C, D.) The Dispute Resolution Policy covers "any dispute arising out of or related to employment of the employee named on the signature page hereof . . . including, without limitation, disputes over trade secrets, unfair competition, compensation, breaks and rest periods, [and] termination." (ER 75, 80-82, ¶ 8, Exh. B.)

While Ashbey argued in his Opposition to Defendant's initial Motion to Compel arbitration in the Central District that his arbitration agreement was unenforceable because it was not signed by an Archstone officer, this argument will get him nowhere. Under the FAA, a valid and binding arbitration agreement need not be signed by the parties. While the FAA "requires a writing, it does not require that the writing be signed by the parties." *Nghiem v. NEC Electronic, Inc.*, 25 F.3d 1437, 1439-40 (9th Cir. 1994) (employee handbook that provided for binding arbitration and of which the plaintiff acknowledged receiving was

19.

sufficient to constitute a writing memorializing an agreement to arbitrate). Indeed, in *Pinnacle Museum, supra*, 55 Cal. 4th at 245-46, the California Supreme Court rejected the type of argument relied on by the District Court, below, "That is, the FAA precludes judicial invalidation of an arbitration clause based on state law requirements that are not generally applicable to other contractual clauses, such as proof of actual notice, meaningful reflection, **signature by all parties**, and/or a unilateral modification clause favoring the nondrafting party. (*Doctor's Associates, Inc. v. Casarotto* (1996) 517 U.S. 681, 687-688 (*Doctor's Associates*) [FAA preempts state's first-page notice requirement for arbitration agreements].)" (emphasis added).

Additionally, although the arbitration agreement is governed by the FAA, courts also look to the relevant state law of contracts when determining whether the parties entered into a valid and enforceable agreement to arbitrate. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). Under California law, a contract need not necessarily be signed to be effective, and acceptance may be implied. *Asmus v. Pacific Bell*, 23 Cal. 4th 1, 14-15 (2000) (employee may accept offer by continuing employment after being given reasonable notice of proposed terms); *Craig v. Brown & Root*, 84 Cal. App. 4th at 420 (applying *Asmus* to arbitration contract). Furthermore, under general contract law in California, "[i]t is a settled rule that the receipt and acceptance by one party of a paper signed by

20.

the other only, and purporting to embody all the terms of a contract between the two, binds the acceptor, as well as the signer, to the terms of the paper." *Dallman Supply Co. v. Smith-Blair, Inc.*, 103 Cal. App. 2d 129, 132 (1951) (internal citations omitted). *AT&T Mobility, supra*, 131 S.Ct. at 1745, requires that these rules be applied equally to arbitration agreements. And, *Pinnacle Museum* confirmed that the FAA preempts any state rule that "discriminates against arbitration." *Pinnacle Museum,* 55 Cal. 4th at 235.

Accordingly, Ashbey and Archstone formed an agreement to arbitrate their disputes.

> **a.   The District Court Incorrectly Held That There Was No Valid Offer To Form An Arbitration Contract.**
>
> **(1)   The Language That the Handbook Does Not "create any contractual rights" Does Not Negate An Explicit Arbitration Provision.**

Based on the following language in the Archstone acknowledgements, the District Court found that there was no offer to form an arbitration contract: "this Company Policy Manual does not alter the employment-at-will relationship discussed in the Archstone Company Policy Manual or create any contractual rights." (ER 3, 7-10, 15, 18-20.)

First, the District Court's adoption of this reasoning is inconsistent with

governing California contract law. The sentence within which the disclaimer is contained refers to at-will employment. (ER 3, 74-76, 83-86, ¶¶ 4, 9, 10, 11, Exhs. C, D.) The immediately following sentence refers to at-will employment. (*Id.*) Under these circumstances, the proper interpretation of the contract is governed by the maxim of "*ejusdem generis*": "[W]here specific words follow general words in a contract, 'the general words are construed to embrace only things similar in nature to those enumerated by the specific words.'" *Nygard, Inc. v. Uusi-Kerttula* 159 Cal. App. 4th 1027, 1045 (2008). The "any contractual rights" phrase is literally sandwiched between references to at-will employment, and therefore the "contractual rights" referred to would be those purporting to alter the at-will relationship. (ER 3, 74-76, 83-86, ¶¶ 4, 9, 10, 11, Exhs. C, D.)

In contrast, the Arbitration Policy states in mandatory terms: "this Policy **requires** all [employment] disputes between Employee and the Company to be resolved **only** by an arbitrator through final and binding arbitration and **not** by way of court or jury trial." (ER 75, 80-82, ¶ 8, Exh. B.) (emphasis added). Thus, if the question is whether the general "any contractual rights" phrase is paramount to the very specific mandates of the Arbitration Policy, California law is again clear. "[U]nder well established principles of contract interpretation, when a general and a particular provision are inconsistent, the particular and specific provision is paramount to the general provision." *Prouty v. Gores Tech. Group*, 121 Cal. App.

22.

4th 1225, 1235 (2004). If the "any contractual rights" disclaimer were applied to the Arbitration Policy, Archstone and its employees would not be, as the Policy states, "require[d]" to submit disputes to arbitration. Therefore, because the Policy is inconsistent with the general "any contractual rights" phrase, the more specific mandates of the policy are paramount.

Similarly, the acknowledgement form also states: "I understand that it is my responsibility to understand the Archstone Company Policy Manual, including the Dispute Resolution Policy, and to adhere to all of the policies contained herein." (ER 2, 75-76, 83-86, ¶¶ 4, 9, 10, 11, Exhs. C, D.) Using the District Court's reasoning, an employee would not have to follow *any* of the policies in the policy manual. This conclusion is clearly against California law. *See Scott v. Pacific Gas & Electric Co.,* 11 Cal. 4th 454, 472 (1995) (finding that employers cannot avoid enforcement of contractual terms by including "policies designed to preserve their traditional managerial prerogatives"); *see also Asmus*, 23 Cal. 4th at 16 ("the fact that one party reserves the implied power to terminate or modify a unilateral contract is not fatal to its enforcement"). If the District Court's reasoning were correct, there would be no point for employers to issue employee handbooks, which is absurd.

Additionally, in *Pearson Dental Supplies, Inc. v. Superior Court*, 48 Cal. 4th 665, 682 (2010), the Court held, "When an arbitration provision is ambiguous, we

will interpret that provision, if reasonable, in a manner that renders it lawful, both because of our public policy in favor of arbitration as a speedy and relatively inexpensive means of dispute resolution, and because of the general principle that we interpret a contractual provision in a manner that renders it enforceable rather than void." *See* CAL. CIV. CODE § 1643 (a contract should be interpreted to make it "lawful, operative, definite, reasonable, and capable of being carried into effect") and CAL. CIV. CODE § 3541 ("[a]n interpretation which gives effect [to an agreement] is preferred to one which makes it void").

Here, the District Court *sua sponte* raised the issue of this disclaimer language without any argument from Ashbey and without providing Archstone any time to provide counter arguments. Even if the disclaimer language *could be* interpreted to mean that there was no valid arbitration agreement, which it does not, under California contract law (as outlined in *Nygard, Prouty* and *Pearson Dental*), the District Court had no choice but to choose the interpretation that favored arbitration.

Instead of following this California precedent, the District Court relied almost solely on this one phrase in deciding that there was no valid arbitration agreement. (ER 3, 7-10, 15, 18-20.) However, a more in depth analysis would have resulted in a different outcome, one that favored enforcement of the parties' agreement. *See e.g., Mitri*, 157 Cal. App. 4th at 1173 (Court of Appeal found that

24.

"the documents submitted by defendants in support of their motion" to compel arbitration must be "[t]aken as a whole" to determine if they "constitute an arbitration agreement"). As a matter of law, the District Court erred in choosing the *one and only* interpretation that would invalidate Archstone's arbitration agreement, notwithstanding the rules of California contract law.

The District Court also erred in relying on off-point cases:

- *Haggard v. Kimberly Quality Care, Inc.*, 39 Cal. App. 4th 508, 513 (1995) involved an implied contract to terminate employment for cause, not the enforcement of an arbitration agreement. The plaintiff in *Haggard* tried to claim that a handbook acknowledgement she signed in 1991 (containing the language that the "guidelines in the handbook 'are not intended to give rise to contractual rights or obligations, nor to be construed as a guarantee of employment for any specific period of time'" and "'You are an 'at will' employee'") modified an earlier 1989 written agreement indicating that her employment was at-will and therefore, that she could only be terminated for cause. *Id.* at 522-23. The court, however, found that the 1991 acknowledgement did not modify the at-will provision of the 1989 agreement and, in fact, "clearly reaffirm[ed] that employment is at-will." *Id.* at 523. (ER 10.)

25.

- In *Bianco v. H.F. Ahmanson & Co.,* 897 F. Supp. 433, 439-40 (C.D. Cal. 1995), the plaintiff argued that an employee handbook created an implied contract to only be terminated for cause. As in *Haggard,* the handbook in *Bianco* had a specific at-will provision, which trumped the plaintiff's implied contract claim. *Id.* at 439. In the instant case Archstone seeks enforcement of a specific contract term (i.e., arbitration), not an implied term contradicting the express agreement to arbitrate disputes. (ER 10.)

- *American Mortgage Network v. LoanCity.com,* 2006 Cal. App. Unpub. LEXIS 10141 (Nov. 7, 2006) should not have been relied on by the District Court because it is an *unpublished* (and therefore, uncitable) case that also did not deal with an arbitration agreement. *See* California Rule of Court Rule 8.1115 (stating that "an opinion of a California Court of Appeal or superior court appellate division that is not certified for publication or ordered published must not be cited or relied on by a court or a party in any other action"). Rule 8.1115 states that unpublished California cases cannot be cited by *any* court and does not limit its application to only California state courts. *See Chazen v. Ciolino (In re Ryan),* 310 Fed. Appx. 980, 983 n. 2 (9th Cir. 2009) (citing to Rule 8.1115 for the holding that a party cannot rely on

an unpublished California state court case in federal court because it "lacks precedential value"). Although *Chazen* is unpublished, it is still citable under Federal Rule of Appellate Procedure Rule 32.1 (which the *Chazen* case specifically refers to). *Id.;* FED. R. APP. P. 32.1 ("Citation [is] permitted" and "A court may not prohibit or restrict the citation of federal judicial opinions, orders, judgments or other written dispositions that have been: (i) designated as 'unpublished,' 'not for publication,' 'non-precedential,' 'not precedent,' or the like; and (ii) issued on or after January 1, 2007."). If *American Mortgage Network* cannot be cited in California courts for the purpose of showing California law, then citing it in federal court cannot show California law. (ER 10.)

- In *Romo v. Y-3 Holdings, Inc.,* 87 Cal. App. 4th 1153, 1159-60 (2001), the court invalidated the arbitration provision because the arbitration agreement required that the plaintiff sign it, and having not signed it, the plaintiff was not bound. (ER 11.)

- Lastly, although placed separately in the opinion, the District Court cited *Kummetz v. Tech Mold, Inc.,* 152 F.3d 1153 (9th Cir. 1998), to support its reasoning that the disclaimer language negated any valid arbitration agreement. (ER 16-18.) While the District Court's states

27.

that *Kummetz* is "stunningly similar to the present one," the facts are actually quite distinguishable. In *Kummetz,* the plaintiff was issued an Employment Information Booklet and Information Booklet Acknowledgement. *Id.* at 1154. Not only did the acknowledgement signed by the plaintiff "not mention or imply that the Booklet contained an arbitration provision," the Booklet did not even actually contain the arbitration agreement. It incorporated the arbitration agreement by indicating that "the employee shall submit to arbitration, as provided in the Dispute Resolution Policy." *Id.* Although, as the District Court focuses on, in *Kummetz* the acknowledgement also stated that "I understand and agree that this Booklet in no way constitutes an employment contract and that I remain an at-will employee," this phrase was not the basis of that Court's analysis. *Id.* at 1155. Rather, the Ninth Circuit in *Kummetz* found that there was no arbitration agreement because "[t]he Acknowledgement he signed did not refer to the fact that the 'Information Booklet' that he had just received included an arbitration clause that waived his right to go to court" and there was "no *explicit* reference to arbitration or waiver of right to sue." *Id.* at 1155. "Because the Acknowledgement failed to alert Kummetz to the fact that the Information Booklet contained an

arbitration clause, the presence of the clause in the Booklet is insufficient under *Nelson* to effect a waiver." *Id.* at 1155-56.

The cases cited by the District Court[2] do not support the conclusion that the acknowledgement disclaimed all contract rights. The part of the acknowledgement relied on by the District Court plainly refers to contract rights that would conflict with at-will employment. Accordingly, the disclaimer cannot be interpreted as preventing formation of an agreement to arbitrate.

> **(2)   Continued Employment After Receipt of Arbitration Agreement Formed An Agreement To Arbitrate.**

The District Court incorrectly concluded that Ashbey's continued

---

[2] The District Court also cited other cases applying Michigan, Indiana, Hawaii or Illinois law, but the presence of contract disclaimer language was not dispositive in any of them. (ER 18-19.) *See Hergenreder v. Bickford Senior Living Group, LLC,* 656 F.3d 411, 416-21 (6th Cir. 2011) (under Michigan law, that there was no valid arbitration agreement because there was no evidence that it was available to the employee); *Gallos v. FIC Am. Corp.,* 2003 U.S. Dist. LEXIS 6080 at *2-3 (N.D. Ill. April 14, 2003) (under Illinois law, the agreement did not create a contract based on *both* the contractual disclaimer and because the acknowledgement form only indicated "that the employee *received* the Handbook" and not that she read it, unlike the present case – also compare with *Pinnacle Museum* and *Craig,* supra, where receipt and continued employment is sufficient); *Gibson v. Neighborhood Health Clinics,* 121 F.3d 1126, 1132 n.1 (7th Cir. 1997) (relying on Indiana law and only mentioning the contractual language in passing in a footnote of the concurring opinion, not as the basis for the its decision); *Douglass v. Pfluger Haw., Inc.,* 110 Haw. 520, 523-24, 532-34 (2006) (finding, under Hawaii law that there was no valid arbitration agreement based on contract disclaimer *and* because the acknowledgement form "makes no mention of the arbitration provision contained in the Handbook").

employment after receiving Archstone's Dispute Resolution Policy was not evidence of his assent to the arbitration agreement. (ER 10-15.) However, California law is just the opposite, as the state Supreme Court recognized in *Pinnacle Museum*, citing *Craig v. Brown & Root* for the proposition that an "employee's continued employment constitutes acceptance of an arbitration agreement proposed by the employer." *Pinnacle Museum,* 55 Cal. 4th at 236. Further, under generally applicable contract law principles, employers are free to unilaterally impose terms and conditions of employment by providing reasonable notice to at-will employees who accept those terms by electing to remain employed thereafter. *See Asmus*, 23 Cal. 4th at 15 (employee may accept offer by continuing employment after being given reasonable notice of proposed terms); *see also DiGiacinto v. Ameriko-Omserv Corp.*, 59 Cal. App. 4th 629, 633 (1997) ("An employee impliedly accepts such modifications by continuing employment after the modification.").

Applying general contract principles, the *Asmus* Court ruled that "the fact that one party reserves the implied power to terminate or modify a unilateral contract is not fatal to its enforcement." *Asmus*, 23 Cal. 4th at 16. Indeed, the *Asmus* Court expressly recognized, "we shall enforce the terms of the contract unless they are illegal or unconscionable." *Id.* at 31. Despite expressly acknowledging the applicability of unconscionability principles to an employer's

30.

unilateral imposition of new terms and conditions of employment, the Court did not conclude that the mere fact that an employer has done so created "procedurally unconscionable" conditions. Rather, the Court found that an employee who receives such modified terms and continues his employment is deemed to consent to them. "Just as employers must accept the employees' continued employment as consideration for the original contract terms, employees must be bound by amendments to those terms, with the availability of continuing employment serving as adequate consideration from the employer." *Id.* at 15.

Accordingly, following *Pinnacle Museum* and *AT&T Mobility*, which require that arbitration agreements be subject to the same standards as other contracts and not "discriminated" against, it can no longer be argued that unilateral imposition of an agreement to arbitrate makes the agreement invalid under California law when California law permits the unilateral imposition of other terms and conditions of employment.

The District Court erroneously held that *Asmus* does not apply to arbitration agreements. (ER 11-13.) However, because the *Asmus* rule applies to employment contracts in general, the "imposition" of arbitration to which Ashbey agreed is just as valid as Archstone's "imposition" of other terms and conditions of employment. For example, the arbitration provision is no different than the rules governing what time Ashbey showed up for work, what his duties were, when he could take

31.

vacations, grounds for discipline, prohibitions against harassment and the myriad other terms and conditions of modern employment. In short, if the *Asmus* rule applies to other terms and conditions of employment, it must be applied to arbitration agreements – the FAA demands nothing less. *AT&T Mobility*, 131 S.Ct. at 1745; *Pinnacle Museum,* 55 Cal. 4th at 235-36, 245-46.

Additionally, especially now that *Pinnacle Museum* has embraced *Craig v. Brown & Root, supra*, the District Court's reasoning must succumb. In *Craig*, the employer sent a memorandum informing employees of the dispute resolution program and explaining its applicability. *Craig,* 84 Cal. App. 4th at 419-20. Archstone did the same here. The 2009 memorandum which accompanied the 2009 handbook highlighted the existence of Archstone's arbitration provision. (ER 74-75, 77-79, ¶¶ 6-7, Exh. A.)

The *Craig* court found that "a party's acceptance of an agreement to arbitrate may be express" such as through the employee's signature on an agreement/acknowledgement "or implied-in-fact where, as here, the employee's continued employment constitutes her acceptance of an agreement proposed by her employer." *Craig,* 84 Cal. App. 4th at 420. Based on this analysis, the *Craig* court found that there was a valid arbitration agreement even though the employee had not actually signed any agreement/acknowledgement.

Additionally, one case cited to by the District Court, *Mayers v. Volt*

32.

*Management Corporation*, 203 Cal. App. 4th 1194 (Feb. 27, 2012) is no longer citable as it has been superseded by a grant of review in *Mayers v. Volt Management Corporation*, 278 P.3d 1167 (June 13, 2012). (ER 12.) *See* California Rules of Court Rule 8.1105(e) ("an opinion is no longer considered published if the Supreme Court grants review or the rendering court grants rehearing"); *see* California Rules of Court Rule 8.1115 (unpublished cases cannot be cited); *Chazen*, 310 Fed. Appx. at 983 n. 2 (federal courts cannot rely on unpublished California state court cases); FED. R. APP. P. 32.1 (showing *Chazen* is still citable even though it is "unpublished"); *see also McKinney v. Bonilla,* 2010 U.S. Dist. LEXIS 71730 at *18-19 (S.D. Cal. July 15, 2010) (unilateral change clause not dispositive on issue of enforceability).

In the instant case, there was no doubt that Ashbey had notice of the Arbitration Policy and continued to work thereafter. Thus, Ashbey is bound.

### (3) The Archstone Acknowledgement Specifically Incorporated The Arbitration Agreement.

The District Court relied on *Mitri v. Arnel Management Co.*, 157 Cal. App. 4th at 1173, for the proposition that signing a handbook acknowledgment did not constitute an agreement to arbitrate. (ER 13-15.) This misses the point, because as held in *Asmus* and *Craig*, and reaffirmed in *Pinnacle Museum*, the acknowledgement simply shows that the recipient was on notice. Continuing

employment thereafter constitutes acceptance and contract formation. Moreover, *Mitri* is readily distinguishable. The handbook acknowledgment that the plaintiff signed in *Mitri* did not specifically refer to the arbitration policy. *Id.* at 1168. Additionally, the arbitration provision in the employee handbook in *Mitri* stated that "all employees are required to sign an arbitration agreement" and "[e]mployees will be provided a copy of their signed arbitration agreement." *Id.* at 1167-68. The *Mitri* Court refused to enforce arbitration because, contrary to the express intent in the offer, no agreement to arbitrate was ever signed. *Id.* at 1171.

Unlike the *Mitri* acknowledgment, by signing the Archstone acknowledgements in 2009 and 2010, Ashbey *agreed to adhere* to Archstone's "Company Policy Manual, *including the Dispute Resolution Policy*." (ER 75-76, 83-86, ¶¶ 9, 10, 11, Exhs. C, D; emphasis added.) Thus, unlike the plaintiff in *Mitri,* Ashbey expressly agreed to arbitrate disputes.[3]

---

[3] For the same reason, the District Court's citation to the case *Nelson v. Cypress Bagdad Copper Corp.*, 119 F.3d 756, 761 (9th Cir. 1997) is also inapplicable. (ER 18.) In *Nelson*, the court refused to enforce an arbitration agreement which was contained in an employment handbook, and for which the employee had signed an acknowledgment form. *Nelson,* 119 F.3d at 761-62. In finding the acknowledgment form ineffective to constitute a "knowing waiver" of the plaintiff's statutory rights, the *Nelson* court noted first that "[n]othing in that acknowledgment notified Nelson . . . that the Handbook contained an arbitration clause," and second that "Nelson agreed only to 'read and understand' the Handbook. He did *not* agree to be bound by its provisions." *Id.* at 761 (emphasis in original). As explained above, that is not the situation in the present case. Further, *Nelson* is of questionable vitality following *AT&T Mobility*, as the "knowing waiver" standard appears to be arbitration specific, whereas under

34.

Similarly, the District Court's reliance on *Romo* is likewise misplaced. (ER 11.) In *Romo* the problem was that the arbitration provision "contemplates a signature from the employee separate from that required [on the handbook acknowledgement], as well as a signature by the employer . . . ." *Romo,* 87 Cal. App. 4th at 1159. The employee in *Romo* had signed a handbook acknowledgement, but he had not signed the arbitration provision. *Id.* at 1155-56.

Here, Archstone did not contemplate a signature separate from that on the acknowledgement in order to effectuate an employee's notice of an agreement to arbitrate. Ashbey's signed acknowledgement incorporated the Dispute Resolution Policy: "I understand that it is my responsibility to understand the Archstone Company Policy Manual, including the Dispute Resolution Policy, and to adhere to all of the policies contained herein." (ER 74-76, 83-86, ¶¶ 4, 9, 10, 11, Exhs. C, D.)

Thus, Ashbey was on notice that if he had disputes, they must be arbitrated.

**b.  The Arbitration Provision Informed Ashbey That He Was Signing An Arbitration Agreement.**

Ashbey signed acknowledgements that he was "agree[ing] to abide by the provisions" contained in the handbook, including, without limitation, the arbitration agreement. (ER 75-76, 83-86, ¶ 9, 10, 11, Exhs. C, D.) The arbitration

---

controlling Supreme Court authority, such as *Howsam, supra,* the agreement is enforceable if it covers the dispute, without any additional requirements.

agreement shows mutuality of consent, as both Ashbey and Archstone were "require[d]" (ER 75, 80-82, ¶ 8, Exh. B.) to arbitrate their disputes by following the procedures stated in them. *See* CAL. CIV. CODE § 1550 (outlining the essential elements of a contract). This is clearly "consent." The District Court also incorrectly held that Ashbey's signature on the acknowledgment did not create a contract to arbitrate because the acknowledgement did not specifically reference "arbitration." (ER 15-18.) True, the acknowledgment refers to a "Dispute Resolution Policy" instead of an "arbitration agreement," but the "policy" expressly incorporated by reference in the acknowledgement is a full blown agreement to arbitrate, and Ashbey agreed to abide by all provisions of the manual in which the "policy" was contained. (ER 74-76, 80-86, ¶¶ 4, 8, 9, 10, 11, Exhs. B, C, D.) The cases relied upon by the District Court involved employees that signed acknowledgements making *no reference* to an arbitration provision, and hence they are all distinguishable.

Before addressing these cases, however, once again *Pinnacle Museum* (which follows controlling U.S. Supreme Court authority) puts an end to requirements for special notice provisions applicable only to arbitration agreements. *Pinnacle Museum*, 55 Cal. 4th at 234-35, 245-46. Following the logic of the cases upon which the District Court relied, in order to have an acknowledgement apply to an arbitration contract, the contract must be expressly

referred to in the acknowledgement. However, because under controlling case law arbitration contracts must be treated the same as other contracts, if the District Court's analysis were correct, then under ordinary contract law principles *every single discrete policy* in the manual would have to be expressly referred to in the acknowledgement. Of course, that requirement is absurd and in fact does not exist in ordinary contract law, but by imposing it on arbitration provisions alone, courts that have adopted this rule are, as *Pinnacle Museum* puts it, "discriminating" against arbitration. *Id.* To the extent the court decisions relied on by the District Court apply such discriminatory rules, they are preempted by the FAA.

In any event, these cases are readily distinguishable because in the case at bar, the Arbitration Policy was referred to expressly (again, however, a requirement that it *must* be referred to expressly is preempted because that requirement does not apply to other provisions of the policy manual):

- In *Chan v. Drexel Burnham Lambert, Inc.*, 178 Cal. App. 3d 632, 635-36, 643 (1986), "the arbitration clause was not incorporated by reference into [the employee's] application form" wherein the form only stated ""I agree to abide by the Statute(s), Constitution(s), Rule(s) and By-Laws as any of the foregoing are amended from time to time of the agency jurisdiction or organization with or to which I am filing or submitting this application; . . . ." (ER 16, n.10.)

37.

- In *Cariaga v. Local No. 1184 Laborers Int'l Union of N. Am.,* 154 F.3d 1072, 1074-75 (9th Cir. 1998), the court found that while the agreement "makes general reference to the 'terms and conditions of Contractor's labor agreements,' it makes no reference whatsoever to the Laborers, the MLA, or the arbitration procedures of the MLA" and "like the document in *Chan* is amorphous and does not 'guide the reader' to the incorporated document." *Id.* at 1075. (ER 16, n.10.)

- The other two cases relied upon by the District Court, *Burke v. Award, Inc.*, G042606, 2011 Cal. App. Unpub. LEXIS 4810 (June 28, 2011) and *Derr v. Superior Court*, 2012 Cal. App. Unpub. LEXIS 968 (Feb. 8, 2012), are both unpublished and therefore, uncitable. (ER 16-17, n.10.) *See* California Rules of Court Rule 8.1115 (unpublished cases cannot be cited by *any* court); *Chazen*, 310 Fed. Appx. at 983 n. 2 (Federal Courts cannot rely on unpublished California state court cases); FED. R. APP. P. 32.1 (showing *Chazen* is still citable even though it is "unpublished"). They also are off point. In *Burke,* the employee handbook contained an arbitration agreement, but the acknowledgement form signed by the employee made no reference to arbitration. *Burke*, 2011 Cal. App. Unpub. LEXIS 4810 at *2. In *Derr,* the arbitration agreement stated that "The parties shall submit

any dispute arising from or relating to this Agreement or the breach hereof, whether based on contract, tort, or statutory duty or prohibition (including any prohibition against discrimination or harassment) to binding arbitration in accordance with the California Arbitration Act." *Derr,* 2012 Cal. App. Unpub. LEXIS 968 at *9. The court interpreted this to mean that only disputes regarding the arbitration agreement were subject to arbitration. *Id.* at *10, 13.

### 2. Ashbey's Claims Are Covered By the Arbitration Agreement.

The claims asserted in Ashbey's Complaint fall within his agreement to arbitrate as they arise directly from his employment with Archstone (an issue at the District Court did not dispute). In his Opposition below, Ashbey argued that claims arising prior to his acknowledging the Dispute Resolution Policy in March 2008 are not covered by the agreement. But Archstone's Dispute Resolution Policy "applies to ***any dispute*** arising out of or related to employment of the employee." (ER 75, 80-82, ¶ 8, Exh. B.) (emphasis added). Ashbey's argument would hold water if he had acted on those preexisting claims by filing a lawsuit before he agreed to arbitrate them. However, once he agreed to arbitrate his employment disputes, the arbitral forum was where he must go. The FAA requires that the agreement be enforced as written, and as written it covers Ashbey's claims.

*Marmet*, 132 S. Ct. at 1202; *CompuCredit,* 132 S. Ct. at 669; *AT&T Mobility*, 131 S. Ct. at 1752. As these cases hold, an agreement to arbitrate shifts the forum where disputes will be resolved, and once Ashbey agreed to arbitrate his disputes, those that arose before he signed as well as those that arose after must be arbitrated. *See, e.g., Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*, 473 U.S. 614, 628 (1985) ("By agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum."); *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 26 (1991) (same).

There thus exists an agreement to arbitrate between Ashbey and Archstone that covers the claims asserted in his Complaint. Any "[d]oubts as to whether an arbitration clause applies to a particular dispute are to be resolved in favor of sending the parties to arbitration." *Vianna v. Doctors' Management Co.*, 27 Cal. App. 4th 1186, 1189 (1994); *see also Pearson Dental*, 48 Cal. 4th at 682.

### D. The Arbitration Agreements Are Not Unconscionable.

The District Court did not address Ashbey's arguments that the arbitration agreement is unconscionable because it held there was no agreement at all. If this Court finds there was an agreement and then reaches unconscionability, only where an agreement is both substantively and procedurally unconscionable or obtained through fraud will it be rendered unenforceable under California law.

CAL. CIV. CODE § 1670.5; CAL. CIV. PROC. CODE §§ 1281, 1281.2. California maintains a "strong public policy in favor of arbitration as a speedy and relatively inexpensive means of dispute resolution." *Moncharsh v. Heily & Blasé*, 3 Cal. 4th 1, 9 (1992). A contract should be read in a way to render it enforceable and valid. CAL. CIV. CODE §§ 1643 & 3541. Courts may not "discriminate" against arbitration by imposing unconscionability rules unique to arbitration. *Pinnacle Museum*, 55 Cal. 4th at 235, following *Perry v. Thomas*, 482 U.S. at 493, n.9.

As explained above, in *Pearson Dental*, the Court held that when there are two potential interpretations in an arbitration agreement, the courts must choose the interpretation that favors arbitration. *Pearson Dental*, 48 Cal. 4th at 682; *see also* CAL. CIV. CODE § 1643 (a contract should be interpreted to make it "lawful, operative, definite, reasonable, and capable of being carried into effect") and CAL. CIV. CODE § 3541 ("[a]n interpretation which gives effect [to an agreement] is preferred to one which makes it void"). Thus, at the very least, these principles must be applied when evaluating whether Archstone's agreement meets the *Armendariz* requirements.

In *Armendariz v. Foundation Health Psychcare Servs.*, 24 Cal. 4th 83 (2000), the California Supreme Court held that an arbitration agreement that covers unwaivable statutory employment rights must (1) provide for a neutral arbitrator, (2) not limit statutorily imposed remedies, (3) provide for adequate discovery, (4)

provide for a written arbitration award, and (5) provide that the employee would not be required to pay either unreasonable costs of any arbitrators' fees or expenses as a condition of access to the arbitration forum. *Id.* at 104. The Court further held that there must be a "modicum of bilaterality" between the employer and the employee as to the claims that each would be obligated to arbitrate pursuant to the arbitration agreement. *Id.* at 117.

### 1.    Armendariz Was Effectively Overruled By AT&T Mobility.

In *AT&T Mobility, supra,* the United States Supreme Court strongly reaffirmed that the FAA preempts any state law that "conflict[s] with the FAA or frustrate[s] its purpose to ensure that private arbitration agreements are enforced according to their terms." *AT&T Mobility,* 131 S.Ct. at 1740, 1750 n.6. The Supreme Court rejected California's application to arbitration agreements of a uniquely stringent unconscionability doctrine, pointedly observing that California "courts have been more likely to hold contracts to arbitrate unconscionable than other contracts." *Id.* at 1747.

To the contrary, "courts must place arbitration agreements on an equal footing with other contracts." *AT&T Mobility,* 131 S.Ct. at 1745; *see Armendariz,* 24 Cal. 4th at 98. For example, the Court in *AT&T Mobility, supra,* noted that a case "finding unconscionable or unenforceable as against public policy consumer arbitration agreements that fail to provide for judicially monitored discovery"

would be preempted by the FAA because the rule, although it applies the general principle of unconscionability, would "have a disproportionate impact on arbitration agreements." *AT&T Mobility,* 131 S.Ct. at 1747. Likewise, *AT&T Mobility* held that the FAA preempted the California Supreme Court's decision in *Discover Bank v. Superior Court*, 36 Cal. 4th 148 (2005), because its holding "interfere[d] with fundamental attributes of arbitration and thus create[d] a scheme inconsistent with the FAA." *Id.* at 1748.

The restrictions placed upon employment arbitration agreements by *Armendariz* suffer from the same deficiencies as the restriction found to be preempted in *AT&T Mobility*. While the *Armendariz* requirements have generally been defended on the ground that they are "applications of general state law contract principles regarding the unwaivability of public rights to the unique context of arbitration, and accordingly are not preempted by the FAA," *Little v. Auto Stiegler, Inc.*, 29 Cal. 4th 1064, 1079 (2003), that is the same line of reasoning that was advanced by the plaintiff and rejected by the United States Supreme Court in *AT&T Mobility*. *AT&T Mobility,* 131 S.Ct. at 1746 (noting that the plaintiffs argued that the *Discover Bank* rule prohibiting class action waivers in certain arbitration agreements was not preempted because it had its "origins in California's unconscionability doctrine and California's policy against exculpation," both of which are principles of general application to all contracts).

43.

Accordingly, the *Armendariz* requirements are preempted by the FAA.

### 2. Alternatively, The Policy Complies With *Armendariz*.

Even if *Armendariz* survives *AT&T Mobility*, its requirements are easily met and the agreement to arbitrate is not unconscionable. In order to refuse to enforce a contract, the agreement must be both procedurally and substantively unconscionable. *See Armendariz,* 24 Cal. 4th at 83. Procedural unconscionability focuses on oppression or unfair surprise and substantive unconscionability focuses on overly harsh or one sided terms. *Sanchez v. Western Pizza Enterprises, Inc.,* 172 Cal. App. 4th 154, 171 (2009). Ashbey, as the party asserting the defense, bears the burden of proving unconscionability. *Pinnacle Museum*, 55 Cal. 4th at 236; *Engalla v. Permanente Medical Group, Inc.*, 15 Cal. 4th 951, 972 (1997); *Graham v. Scissor-Tail, Inc.*, 28 Cal. 3d 807, 820 (1981); CAL. EVID. CODE §500. Ashbey cannot make this showing.

### a. The Arbitration Agreement Is Not Procedurally Unconscionable.

Procedural unconscionability is found where there is oppression arising from unequal bargaining power combined with surprise arising from hidden or buried terms in a long or complex printed form. *Roman*, 172 Cal. App. 4th at 1479. It generally arises in the commercial context where consumers complete purchase transactions containing small print with buried arbitration clauses, known as

"prolix printed forms." *Wayne v. Staples, Inc.*, 135 Cal. App. 4th 466, 480 (2006).

That is not the case here. Although standard employment agreements offered on a take-it-or-leave-it basis are generally considered contracts of adhesion, this alone is not enough to equate to unconscionability. *Graham,* 28 Cal. 3d at 817-19 ("To describe a contract as adhesive in character is not to indicate its legal effect. It is, rather, the beginning and not the end of the analysis insofar as enforceability of its terms is concerned."). Stated differently, adhesion contracts are "fully enforceable . . . unless certain other factors are present which under established legal rules – legislative or judicial – operate to render it otherwise." *Id.* at 819-20; *Harper v. Ultimo*, 113 Cal. App. 4th 1402, 1409 (2003) (adhesion alone does not render arbitration agreements unconscionable); *see also Morris v. Redwood Empire Bancorp.*, 128 Cal. App. 4th 1305, 1318 (2005) ("Undue reliance on any one procedural factor to the exclusion of others may produce analytical myopia and obscure the larger unconscionability picture.").

Further, *AT&T Mobility* put to rest the notion that adhesion contracts under the FAA may be treated differently than other contracts when it comes to enforcing arbitration agreements: "but the times in which consumer contracts were anything other than adhesive are long past." *AT&T Mobility,* 131 S.Ct. at 1750.

Archstone's arbitration provision was clearly laid out in a separate two-page Dispute Resolution Policy, which Ashbey just as clearly acknowledged. (ER 74-

45.

76, 80-86, ¶¶ 4, 9, 10, 11, Exhs. B, C, D.) Its existence was highlighted in the memo that accompanied the 2009 handbook. (ER 74-75, 77-79, ¶¶ 6, 7, Exh. A.) In fact, the arbitration provision was written in plain, clear English and was not hidden or buried in a footnote or in a complex document and, as such, there was no surprise sufficient to render the agreement procedurally unconscionable. Moreover, following *Asmus* and *Craig v. Brown & Root*, discussed *supra*, under *AT&T Mobility*, if an employer may unilaterally impose terms and conditions of employment, the FAA would preempt a ruling that doing so with an arbitration provision is procedurally unconscionable.

### b. The Agreement Is Not Substantively Unconscionable.

Substantive unconscionability focuses on whether the terms are "one sided" or "overly harsh." *Armendariz,* 24 Cal.4th at 114. Thus, in order to prove that the agreement is substantively unconscionable, Ashbey must prove that its terms are "so extreme" or "unfair" as to "shock the conscience." *24 Hour Fitness, Inc. v. Super. Ct.*, 66 Cal. App. 4th 1199, 1213 (1998) (finding arbitration agreement enforceable where employee failed to demonstrate "concrete reason why the terms of the agreement are unduly harsh, oppressive or one-sided"); *Fittante v. Palm Springs Motors*, 105 Cal. App. 4th 708, 723-25 (2003) (holding that the arbitration agreement at issue had a "modicum of bilaterality" and was thus enforceable). Where, as here, there is little evidence of procedural unconscionability, an

46.

agreement must be significantly more oppressive on a substantive basis in order to warrant a finding of overall unconscionability. *Davis v. O'Melveny & Myers*, 485 F.3d 1066, 1072 (9th Cir. 2007); *Armendariz,* 24 Cal.4th at 114. This heightened standard serves a necessary function: "With a concept as nebulous as 'unconscionability' it is important that courts not be thrust in the paternalistic role of intervening to change contractual terms that the parties have agreed to merely because the court believes the terms are unreasonable. The terms must *shock the conscience*." *Morris*, 128 Cal. App. 4th at 1322-23 (internal citations omitted) (emphasis added); *accord, Am. Software, Inc. v. Ali*, 46 Cal. App. 4th 1386, 1390 (1996); *see also Pinnacle Museum,* 55 Cal. 4th at 246 ("A contract term is not substantively unconscionable when it merely gives one side a greater benefit; rather, the term must be 'so one-sided as to 'shock the conscience.''")

*Armendariz* concluded that an employee's statutory FEHA rights are vindicated through arbitration where the arbitration agreement has a "modicum of bilaterality" and expressly or impliedly meets five (5) requirements:

> (1) a neutral arbitrator, (2) more than minimal discovery, (3) a written award, (4) all of the types of relief that would otherwise be available in court, and (5) no requirement that employees pay either unreasonable costs or any arbitrators' fees or expenses as a condition of

47.

access to the arbitration forum.

*Armendariz,* 24 Cal. 4th at 102-13. The parties' agreement satisfies these criteria.

The agreement is mutual as it requires all claims between the parties to be submitted to binding arbitration: "[T]his Policy is intended to apply to the resolution of disputes that otherwise would be resolved in a court of law, and . . . only by an arbitrator through final and binding arbitration." (ER 75, 80-82, ¶ 8, Exh. B.) The agreement applies to both employer and employee claims. *Armendariz,* 24 Cal.4th at 120 (an agreement is sufficiently mutual if it requires both parties "to arbitrate all claims arising out of the same transaction or occurrence or series of transactions").

The agreement also meets the five *Armendariz* requirements:

First, it provides for a neutral arbitrator: "A neutral arbitrator shall be selected by mutual agreement of the parties." (ER 75, 80-82, ¶ 8, Exh. B.)

Second, it provides for adequate discovery, as it provides that "[i]n arbitration, the parties will have the right to conduct civil discovery and bring motions, as provided by the forum state's procedural rules." (*Id.*) *See Armendariz,* 24 Cal. 4th at 106 (recognizing that "a limitation on discovery is one important component of the 'simplicity, informality, and expedition of arbitration'" and holding that employees are only "entitled to discovery sufficient to adequately arbitrate their statutory claim, including access to essential documents and

witnesses, as determined by the arbitrator").

Third, it provides for a written decision by the arbitrator as follows: "The Arbitrator will issue a decision or award in writing, stating the essential findings of fact and conclusions of law." (ER 75, 80-82, ¶ 8, Exh. B.)

Fourth, it allows for all types of relief that would otherwise be available in court, as it specifically provides that "[t]he Arbitrator may award any party any remedy to which that party is entitled under applicable law." (*Id.*)

Fifth, it does not require Ashbey to pay any unreasonable costs or inappropriate fees, providing that "in all cases where required by law, the Company will pay the arbitration fees." (*Id.*)

Archstone's arbitration agreement satisfies *Armendariz* even if the Court finds that the case has not been preempted by the FAA.

### E. The Court Should Order Arbitration and Dismiss or Alternatively Stay This Action Pending Arbitration.

Ashbey's Claims are covered by his agreement to arbitrate. If all of a party's claims are subject to arbitration, a court properly dismisses a case. *See, e.g., Simula, Inc. v. Autoliv, Inc.,* 175 F.3d 716 (9th Cir. 1999) (affirming order compelling arbitration and dismissing complaint); *Sparling v. Hoffman Constr. Co.,* 864 F.2d 635, 641 (9th Cir. 1988) ("The court did not err in dismissing [plaintiff's] claims because [plaintiff] agreed to submit such claims to

arbitration.").  If the Court concludes that dismissal of Ashbey's claims is inappropriate, then the Court must stay this matter and order Ashbey to submit his claims to binding arbitration.  The FAA provides that the Court "**shall** . . . order" the parties to proceed to arbitration and "stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement."  9 U.S.C. §§ 3-4 (emphasis added).

## VIII.

## CONCLUSION

For all of the reasons stated above, this Court should reverse the District Court's order and grant Archstone's Motion to Compel Arbitration.


Dated:   October 22, 2012


/s/ Connie L. Michaels
CONNIE L. MICHAELS
SARAH E. ROSS
LITTLER MENDELSON, P.C.

Attorneys for Defendant-Appellant
ARCHSTONE COMMUNITIES LLC
(erroneously sued as "ARCHSTONE
PROPERTY MANAGEMENT, INC.")

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule 32(a)(7)(C) of the Federal Rules of Appellate Procedure, the undersigned counsel certifies that the foregoing Opening Brief is double-spaced, utilizes 14-point proportionately spaced Times New Roman typeface, and contains 11,579 words.

Dated:   October 22, 2012

/s/ Connie L. Michaels
CONNIE L. MICHAELS
SARAH E. ROSS
LITTLER MENDELSON, P.C.

Attorneys for Defendant-Appellant
ARCHSTONE COMMUNITIES LLC
(erroneously sued as "ARCHSTONE
PROPERTY MANAGEMENT, INC.")

## <u>STATEMENT OF RELATED CASES</u>

Pursuant to Local Circuit Rule 28-2.6, Defendant-Appellant Archstone Communities LLC states that it is not aware of any related cases in this Court.

Dated:   October 22, 2012

/s/ Connie L. Michaels
CONNIE L. MICHAELS
SARAH E. ROSS
LITTLER MENDELSON, P.C.

Attorneys for Defendant-Appellant
ARCHSTONE COMMUNITIES LLC
(erroneously sued as "ARCHSTONE
PROPERTY MANAGEMENT, INC.")

## PROOF OF SERVICE BY OVERNIGHT DELIVERY

I am employed in Los Angeles County, California. I am over the age of eighteen years and not a party to the within-entitled action. My business address is 2049 Century Park East, 5th Floor, Los Angeles, California 90067.3107. On October 22, 2012, I caused the following documents:

**DEFENDANT- APPELLANT ARCHSTONE COMMUNITIES LLC'S OPENING BRIEF ON APPEAL**

**DEFENDANT- APPELLANT ARCHSTONE COMMUNITIES LLC'S ADDENDUM TO OPENING BRIEF ON APPEAL**

to be Federal Expressed for overnight delivery to the following:

Avi Burkwitz, Esq.
Peterson-Bradford-Birkwitz
100 North First Street
Suite 300
Burbank, CA 91502
T: (818) 562-5800
F: (818) 562-5810

*Attorneys for Plaintiff*
Michael Ashbey

I am readily familiar with the firm's practice of collection and processing correspondence for mailing and for shipping via overnight delivery service. Under that practice it would be deposited with the U.S. Postal Service or if an overnight delivery service shipment, deposited in an overnight delivery service pick-up box or office on the same day with postage fees thereon fully prepaid in the ordinary course of business.

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on October 22, 2012, at Los Angeles, California.

_____/s/_____

Cescily Thomas-McKoy

Firmwide:115406810.1 050606.1054

2.